**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**NATHANIEL TOVORIS BRENT, #24357**                                            **PLAINTIFF**

**VS.**                                                              **CIVIL ACTION NO. 3:12CV215-LRA**

**DARRELL KYLES, ET AL**                                                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This § 1983 action is before the Court on the Motion for Summary Judgment [31] filed by Defendants Sheriff Tyrone Lewis, Captain Mike Ivy and Deputy Darrell Kyles. The Court has considered all related pleadings, including the response of Plaintiff Nathaniel Tovoris Brent [34], and his sworn testimony at the omnibus hearing conducted on October 11, 2012. The Court finds that the applicable law requires a finding that the motion is meritorious and should be granted for the reasons discussed below.

**I.   Facts and Procedural History**

Plaintiff testified that on March 12, 2012, he was housed in the Hinds County Detention Facility as a pretrial detainee. According to Plaintiff, he was on his "recreation time" and had five minutes remaining. He was talking on the telephone at the time. Defendant Deputy Kyles came to the zone and was very upset because "there were guys out who wasn't supposed to be out." [31-2, pp. 4-5]. Deputy Kyles began trying to lock them down. As he was doing so, Kyles said "Brent, you're going on lockdown too." Plaintiff then testified as follows:

BRENT: Kyles, you told me we've got five minutes.  He was like, Man, I said lock down.  You don't know nothing.  I know you're a stone, and all this.  I'm like, Man, I know you.  What that got to do with anything, you know.  So he took his mace out.  So I turned my back to him.  I said, Man, you ain't got to do all of that, Kyles.  This is supposed to be my recreation time.  You know, you told me I got five minutes.

BRENT:  So he sprayed me but he didn't get to spray me in my face because I had my back to him.  So when he seen he didn't get to spray me good, he said, Man, you know, I know who you is.  You a stone.  And he sprayed me again.  He came to the side and he sprayed me.  This time he got me in my face.  So I leaned up against the wall and he punched me in the back of my head.  ...

So all the guys who was out, you know, they was ready to, I don't know, they started arguing because, you know, it was different gangs---gang organizations in there.  And one of the other deputy sheriffs, he rushed in and he just grabbed me.  You know, I'm like, man, I've got mace in my eyes.  You seen the man hit me with my back turned and my hands in the air.  And Kyles was just cursing, and, I don't know, he was talking all type of stuff.
...

THE COURT:  You said that he asked you to do something and you started talking to him.  You didn't comply right away?

BRENT:  Yes, ma'am.  See, when he came on the zone---well, he came and let us out upstairs for our recreation and he went back into the tower outside the zone.  So while he was out, guys downstairs started sneaking out their cells.  So when he looked and seen it was too many people out, so he came in and was like, everybody downstairs, go to your cell.  Upstairs, ya'll ain't got but five minutes.  So by that time the phone ---I got on the phone for them five minutes while he was locking downstairs the inmates down.  So when he got through, he said, Brent, you come on, too. I'm like, Kyles, you just told me I had five minutes.

2

>THE COURT:  All right.  So you didn't do what he told you at that point?
>
>BRENT:  Yes, ma'am.

[31-2, pp. 5-7].

Defendant Deputy Kyles submitted a sworn affidavit in support of the Motion for Summary Judgment, 31-5.  Deputy Kyles confirms the incident, describing it as follows:

>4.  On the date in question, I was working the A-3 pod and ordered the inmates there to go back to their cells following recreational time.  Nathaniel Brent was on the telephone, and after I specifically told him to catch up, he jumped up and yelled, "we ain't going,"  When I asked Inmate Brent not to yell, he only became more irate and started yelling louder.  I believed that Inmate Brent was attempting to start a riot in the pod area.  Because he did not respond to my repeated requests to go to his cell and not yell, and because other inmates were still out of their cells at that time, I decided that my only option was to use pepper spray in order to control Inmate Brent.
>
>5.  Inmate Brent ducked when I started to spray, and the majority of pepper spray got on the side of his face and jumpsuit.  After spraying Inmate Brent, he charged my general direction and in order to defend myself, I struck him one time with an open hand strike to the left side of his face, in the ear and neck area.  With this strike, Inmate Brent went to one knee and stated "I give up."
>
>6.  Inmate Brent was placed in his cell until I could get the other inmates back to their cells.  Once all other inmates were secure in their cells, I took Inmate Brent to medical so that he could wash the pepper spray off.
>
>7.  All of my actions on this day were the result of Inmate Brent's aggression towards me, and were taken for the sole purpose of regaining control of the pod.

[31-5, p, 2-3].

These were Plaintiff's only allegations against Defendant Kyles.  His medical records confirm that he was taken to medical after this incident and treated by the on-site nurse.  She reported that Brent had no acute distress and had normal vital signs.  [31-4, p. 3].  He made no complaints of any pain due to this incident, other than burning to his skin and face.  He was allowed to wash the spray from his face.  Another medical report from the next day, March 13, 2012, indicates that Brent's left wrist and elbow were swollen.  Brent did not complain of any left arm pain from the incident with Kyles.

As relief, Plaintiff requested to "seek criminal charges" on Defendant Kyles and asked that he be "permanently terminated from the Hinds County Detention Center."  He also asked for $1,000,000 in damages.

Plaintiff testified that he sued Captain Ivy for this incident because he was Kyles's supervisor.  Plaintiff told Captain Ivy about the incident and Ivy told him he would "handle it."  Although Plaintiff filed a grievance with Ivy, Ivy never responded to it.  Defendant Ivy was not personally involved in the incident, however.

Plaintiff filed motions to amend his complaint [16 & 17] prior to the omnibus hearing.  At the omnibus hearing, Plaintiff explained the additional claims he raised against Sheriff Tyrone Lewis and Captain Ivy.  These motions were granted by the Court in that Order [33] filed after the instant motion was filed.

Plaintiff testified regarding his additional claims, which involved a separate incident in which Deputy Kyles had no involvement. According to Plaintiff, on April 10, 2012, he

4

was released "by accident." Defendants contend that he escaped from custody on that date. Nevertheless, he was recaptured on April 11, 2012, and brought back to the HCDF on April 12, 2012. According to Plaintiff, he attempted to surrender "humbly" to Jackson Police Department officers, to avoid being apprehended by Hinds County deputies. As he was being handcuffed, two Hinds County deputies approached and tazed him and then assaulted him by kicking and punching him. According to Plaintiff, he lost consciousness.

Plaintiff was charged with escape after this incident. He was later housed in a segregated lockdown cell with leg-iron shackles. Plaintiff did not name the deputies who assaulted him as Defendants in the amended complaint–he only named Sheriff Lewis and Captain Ivy. He testified that Sheriff Lewis was not present when he was assaulted and that he suing the Sheriff because "he is the sheriff and knows his deputies." Captain Ivy was also sued in his supervisory capacity.

**II.    Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id*. at 322. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

**III.   Analysis**

    **A.   Failure to Supervise**

Plaintiff's testimony confirms that his only claims against Sheriff Lewis and Captain Ivy are based on his contentions that these persons were responsible for Deputy Kyle's actions and were responsible for the unnamed deputies who assaulted him. In essence, Brent attempts to set forth a "failure to supervise" claim. Plaintiff confirms by his testimony that neither Captain Ivy or Sheriff Lewis were actually present when either of the incidents occurred or had any prior knowledge that Deputy Kyles would pepper spray and hit him or that the unnamed deputies would taze and assault him upon his capture.

Plaintiff did not state whether he was suing these Defendants in their individual capacities or official capacities, or both. The undersigned has considered the claims against these Defendants in both capacities. The claims arose against these Defendants because of their official roles as the Sheriff and Captain of the Hinds County Sheriff's Department.

The claims are effectively against the county, and such an entity cannot be held liable under § 1983 solely because it employed a tortfeasor. *Monell v. Department of Social Services*, 436 U.S. 658, 691-692 (1978). The *Monell* Court held that the language of § 1983 "should not be read to impose liability vicariously ... solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Id.* at 692. Instead, a municipality or county can be held liable "when execution of a government's policy or custom ... inflicts the injury." *Id.* at 694.

Plaintiff has not provided any evidence of a policy, custom or practice which would have caused an infliction of excessive force under either situation. He has not shown any evidence of constitutional inadequacies with regard to the training, supervision or control of subordinate employees engaged in the operations of the Hinds County Detention Facility. Although Plaintiff generally alleges that Kyle "had incidents in the past," he provided no specifics regarding these prior incidents or makes no allegations that either Lewis or Ivy knew of any such incidents. As Defendants point out, the law requires more than a single instance of a lack of training or supervision before a showing of "deliberate indifference" can be shown. *Thompson v. Upshur County*, 245 F.3d, 447 (5th Cir. 2001). These Defendants cannot be held liable in their official capacities under the law.

To hold these individual Defendants liable in their individual capacities, a failure to train or supervise claim requires that Plaintiff show:

(1) the supervisor either failed to supervise or train the subordinate official;

7

> (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and
>
> (3) the failure to train or supervise amounts to deliberate indifference.

*Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). To show "deliberate indifference," a plaintiff must prove a *pattern* of violations and prove that the inadequacy of the training was obvious and likely to result in a constitutional violation. *Id.* "[A] showing of deliberate indifference is difficult, although not impossible to base on a single incident." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 813 (1985) (evidence of a singular incident in and of itself is insufficient to impose liability).

Plaintiff has not pointed to any evidence which indicates that any training or supervision was anything less than adequate. Plaintiff's conclusory accusations that Deputy Kyles had prior "incidents" is insufficient under the law to set forth a failure to supervise claim. Plaintiff has pointed to no evidence whatsoever which would indicate training was inadequate, or that the lack of training or supervision caused the alleged assaults by either Kyles or the unnamed deputies.

In pleading, a plaintiff must "'raise a right to relief above a speculative level,' *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 554-55 (2007)). As to Defendants Lewis and Ivy, Plaintiff has failed to do so both in his pleadings and by his oral explanation of his claims. The Court

8

concludes that Defendants Lewis and Ivy are entitled to qualified immunity to all claims against them in their individual capacities.

### B. Eighth Amendment Excessive Force Claim Against Defendant Kyles

Defendant Kyles asserts that he is entitled to qualified immunity as to the claims made against him by Plaintiff in his individual capacity.  This defense is a shield from individual liability for "government officials performing discretionary functions ... as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis,* 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  When a defendant asserts the defense, a plaintiff has the burden to rebut the defense.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't,* 480 F.3d 358, 363 (5th Cir. 2007).  In the context of a summary judgment motion, the Court will look to the evidence before it in the light most favorable to the plaintiff.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (quoting *Behrens v. Pelletier,* 516 U.S. 29, 309 (1996)).

A two-step analysis is used in determining whether qualified immunity applies. First, the court must determine whether plaintiff "has adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v. Montgomery,* 569 F.3d 213, 217 (5th Cir. 2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  If a constitutional violation has been alleged, the court must then determine whether the officer's actions "were objectively unreasonable in light of clearly established law at the time of the conduct in question."  *Id.*

(quoting *Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007)). Whether the official acted with objective reasonableness is an issue of law reserved for the court. *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 1999).

In this case, Plaintiff has asserted that excessive force was used on him by Defendant Kyles. If the force used (pepper spray and a punch) was excessive to the need, then a constitutional violation has been stated. The Due Process Clause, applicable to the States through the Fourteenth Amendment, protects a pretrial detainee from excessive force that amounts to punishment. *Graham v. Conner*, 490 U.S. 386, 395, n. 11 (1989). The proper core inquiry to be used by the Court in an excessive use of force claim is whether force was "applied in a good-faith effort to maintain or restore discipline," rather than "maliciously and sadistically with the intention to cause harm.'" *Galada v. Payne,* 421 F. App'x 460, 462 (5th Cir. 2011) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6-7 (1992)).

To prevail on an excessive force claim, plaintiffs must establish (1) an injury which is more than *de minimis* (2) which resulted directly and only from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was clearly unreasonable. *Freeman*, 483 F.3d at 416, quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

Factors to be used in analyzing whether force was excessive include:

1. The extent of the injuries suffered;

2. The need for the application of force;

      3.      The relationship between the need and the amount of force used;

      4.      The threat reasonably perceived by the responsible official; and

      5.      Any efforts made to temper the severity of a forceful response.

*Hudson v. McMillian,* 962 F.2d 522, 523 (5th Cir. 1992).

Defendant Kyles argues there was no excessive force because (1) he was acting to restore order and to prevent a riot; and, (2) that the injury was *de minimis.* As support, Defendant submitted Plaintiff's medical reports; the Inmate Infraction Form, [31-3, p. 10]; the Incident Report [31-3, p. 19]; the Use of Force Report [31-3, pp. 20-21]; and, his own affidavit.

The extent of Plaintiff's injuries have been considered. The pepper spray apparently was not sprayed directly into Plaintiff's eyes, as the initial spray missed him. He was then sprayed from the side, and spray did get in his eyes. He was immediately taken to medical and his eyes were washed out with "milky stuff." The use of pepper spray is not forbidden by the United States Constitution, and its application in and of itself is not "excessive force." *See Stone v. Damons*, 252 F. App'x 581 582 (5th Cir. 2007) (per curiam) (affirming summary judgment dismissing Eighth Amendment case where officer used pepper spray on plaintiff resisting arrest); *Bailey v. Turner*, 149 F. App'x 276, 278 (5th Cir. 2005)(per curiam) (reversing judgment at law where factual dispute existed as to whether plaintiff was sprayed by mace directly in face for 1-25 seconds after restrained in handcuffs).

Plaintiff testified that he had no "permanent injury" from the pepper spray. He testified that Kyles hit him with his fist in the back of his head, and he "had a knot on the back of [his] head." He also testified that he suffered no "permanent injury" due to this blow, either. Kyles contends that because Plaintiff ducked when he started to spray, most of the pepper spray got on the side of his face and his jumpsuit. According to Kyles, Plaintiff then charged in his general direction, so he struck him once with an open hand strike. Plaintiff's testimony was that the strike was with a closed fist.

There are various factual differences in the versions of the incident given by Plaintiff and Kyles. However, Plaintiff conceded to this Court in his testimony that he did not immediately follow Kyles's order and that he argued with Kyles about whether he would immediately go back to his cell---- he wanted his five additional minutes of telephone conversation. He also conceded to this Court that other inmates in the A-3 pod were out of their cells, and should not have been. ["... he was in a rage because there was guys out who wasn't supposed to be out." 31-2, pp. 5-6]. Plaintiff also confirmed that Kyles first attempted to lock him down without force by simply instructing him to go to his cell— but that Plaintiff argued with him instead. Plaintiff confirms that Kyles *was* attempting to restore order in the pod and get the inmates locked down when the force was applied. He also testified that he did *not* obey Kyles's initial direction--- instead he argued and remained on the phone. An important undisputed fact is that Kyles confirms that inmates from

different gangs were out of their cells and were beginning to argue. This testimony confirms Kyles's belief that a gang riot threat existed in the pod.

There are factual disputes remaining: whether Plaintiff was subdued by the pepper spray or whether he "charged" in Kyles's general direction after the spray; whether Plaintiff was actually trying to start a riot or whether Kyles believed he was trying to start a riot; and, whether the strike was by open or closed fist. Yet, under the totality of circumstances, the Court finds that these factual distinctions are not material. The material facts *are undisputed*:

1. That Kyles was concerned that prisoners were out who should not have been, and the prisoners who were out were from different gangs and had begun arguing;

2. That Kyles was attempting to lock down the pod and to restore security and order in the pod prior to the incident;

3. That Kyles did issue Plaintiff a directive in his effort to restore order, and Plaintiff did not immediately comply with Kyles's directive-- he argued and refused to voluntarily lock down;

4. That Kyles applied force to bring Plaintiff into compliance;

5. That the force used did not cause permanent or severe injuries; and,

6. Plaintiff was immediately treated for the injuries (indicating an effort to "temper" the results of the force).

Given these undisputed facts, and based on the totality of the circumstances, the Court concludes as a matter of law that Kyles did not use unconstitutional force and,

alternatively, that he acted with objective reasonableness. For this reason, the Court finds that the Motion for Summary Judgment should also be granted as to Defendant Kyles.

## III. Conclusion

The Court finds that Defendants' Motion for Summary Judgment [31] should be granted; they are entitled to a judgment at law. A Final Judgment shall be entered in favor of all Defendants, and Plaintiff's lawsuit shall be dismissed with prejudice.

THIS the 30th day of September 2013.

>/s/ Linda R. Anderson
>UNITED STATES MAGISTRATE JUDGE